CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

August 05, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **RONDELL WALDRON,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:24-cv-00324** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Hon. Michael F. Urbanski** |
| **J.C. STREEVAL, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Rondell Waldron, a federal inmate proceeding pro se, was previously incarcerated at USP Lee. He filed this civil action against the United States, the Federal Bureau of Prison (BOP), the Department of Justice (DOJ), USP Lee, and J.C. Streeval, the former Warden of USP Lee, seeking to recover damages for injuries that resulted from falling from a top bunk while having a seizure. The defendants construed the complaint as attempting to assert claims under the Federal Tort Claims Act (FTCA) and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and Waldron does not dispute that construction. The case is presently before the court on the defendants' motion to dismiss and for summary judgment, ECF No. 10. For the reasons set forth below, the motion is **GRANTED**.

### I.    Background

Waldron alleges that he suffered a seizure at USP Lee on January 21, 2023, during which he fell from his top bunk, hit his head, and fractured his toe. Compl., ECF No. 1, at 1; Compl. Attach., ECF No. 1-1, at 1. Medical records attached to the complaint indicate that

Waldron underwent x-rays following the incident and that he was prescribed medication for pain. Compl. Attach. at 5–8.

Waldron alleges that he had been assigned to the top bunk two days prior to the incident, despite notifying the unit officer that he required a bottom bunk due to his history of seizures. Compl. Attach. at 1. Waldron claims that the officer acted with deliberate indifference to his medical needs and that the BOP is "liable for this neglect" because the officer was acting within the scope of his employment. Id.

On July 19, 2023, Waldron submitted an administrative claim under the FTCA using Standard Form 95. Defs.' Ex. 2, Attach. A, ECF No. 11-2. He described his claim as one for "deliberate indifference to medical needs" and alleged that he had sustained injuries to his toe, ear, and head as a result of falling from a top bunk at USP Lee. Id.

The BOP denied the administrative claim by letter dated August 17, 2023. See Compl. Attach. at 10; Defs.' Ex. 3, Attach. B, ECF No. 11-3. The letter stated that "[a]n investigation into [the] claim failed to reveal that [Waldron] suffered a compensable personal injury due to the negligence of a government employee acting within the scope of employment." Id. The letter advised Waldron that if he was dissatisfied with the decision, he could "file suit in the appropriate U.S. District Court not later than six months after the date of this letter." Id. The letter indicates that it was sent by certified mail with tracking number 7019 1640 0000 0834 9848. Id.

More than seven months later, on March 20, 2024, Waldron resubmitted the same administrative claim to the BOP. Compl. Attach. at 2; Defs.' Ex. 4, Attach. C, ECF No. 11-4. By letter dated March 28, 2024, the BOP advised Waldron that it could not accept the

administrative claim because it was "a duplicate of claim TRT-MXR-2023-07206, which was denied via certified letter on August 17, 2023." Compl. Attach. at 12; Defs.' Ex. 5, Attach. D, ECF No. 11-5.

By letter dated April 11, 2024, Waldron clarified that his March 20, 2024, submission was intended to be a request for reconsideration. Defs.' Ex. 6, Attach. E, ECF No. 11-6. Because more than six months had passed since Waldron's administrative claim was denied, the BOP denied the request for reconsideration on April 18, 2024. Compl. Attach. at 11; Defs.' Ex. 7, Attach. F, ECF No. 11-7. The letter indicated that Waldron's claim was "forever barred" because he "failed to meet the statutory deadline." Id. The letter also indicated, incorrectly, that Waldron had six months from the date of the letter to file suit in the appropriate United States District Court, should he choose to do so. Id.

## II.    Procedural History

On May 14, 2024, Waldron executed a form complaint against the United States and other defendants, seeking to recover $7,000,000 in monetary damages. In response to the complaint, the defendants filed a motion to dismiss and for summary judgment. Among other arguments, the defendants contend that the FTCA claim is untimely and that a Bivens remedy is unavailable for Waldron's claim of deliberate indifference. See Defs.' Mem., ECF No. 11, at 2. Waldron has responded to the motion, ECF No. 14, and the motion is ripe for review.

## III.    Standards of Review

The defendants filed their motions pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), a defendant may seek dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule

3

12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Under Rule 56, the court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks omitted).

## IV.    Discussion

### A.    FTCA Claim

"As a general matter, the United States is immune from suit unless it waives that immunity." Sanders v. United States, 937 F.3d 316, 327 (4th Cir. 2019) (internal quotation marks omitted). The FTCA, which authorizes certain tort claims against the United States, provides a "limited waiver of the government's sovereign immunity for injury or loss caused by the negligent or wrongful act or omission of government employees acting within the scope

of their employment." <u>Doe v. Meron</u>, 929 F.3d 153, 161 (4th Cir. 2019); <u>see also</u> 28 U.S.C.

§ 1346(b)(1)). "This waiver permits suit only on terms and conditions strictly prescribed by

Congress." <u>Gould v. U.S. Dep't of Health & Human Servs.</u>, 905 F.2d 738, 741 (4th Cir. 1990).

Among other terms and conditions, Congress established a deadline for bringing

FTCA actions:

> A tort claim against the United States shall be forever barred
> unless it is presented in writing to the appropriate Federal agency
> within two years after such claim accrues or unless action is begun
> within six months after the date of mailing, by certified or
> registered mail, of notice of final denial of the claim by the agency
> to which it was presented.

28 U.S.C. § 2401(b). Although § 2401(b) is written in the disjunctive, the statute "has been

interpreted as including two separate timeliness requirements." <u>Redlin v. United States</u>, 921

F.3d 1133, 1136 (9th Cir. 2019). "A claim is timely only if it has been: (1) submitted to the

appropriate federal agency within two years of accrual and (2) filed in federal court within six

months of the agency's final denial." <u>Id.</u> (citing <u>United States v. Wong</u>, 575 U.S. 402, 405

(2015)); <u>see also</u> <u>Sconiers v. United States</u>, 896 F.3d 595, 599 (3d Cir. 2018) (agreeing with

"every other circuit to have considered this issue, each of which has held that both conditions

must be satisfied") (collecting cases); <u>Fleming. v. United States</u>, 200 F. Supp. 3d 603, 608 (D.

Md. 2016) (noting that "common sense and the legislative history tell us that [§ 2401(b)]

requires the claimant <u>both</u> to file the claim with the agency within two years after accrual of

the claim <u>and</u> then to file a complaint in the District Court within six months after the agency

denies the claim") (quoting <u>Schuler v. United States</u>, 628 F.2d 199, 201 (D.C. Cir. 1980)).

"Under regulations promulgated by the Department of Justice, a claim is 'presented' to

the agency for purposes of § 2401(b) when the agency receives the claim." <u>Redlin</u>, 921 F.3d at

1136 (citing 28 C.F.R. § 14.2(a)). "A claim for personal injury may be presented by the injured

person, his duly authorized agent, or legal representative." 28 C.F.R. § 14.3(b). An agency's

final denial of an administrative claim must be in writing and "shall include a statement that,

if the claimant is dissatisfied with the agency action, he may file suit in the appropriate U.S.

District Court not later than 6 months after the date of mailing of the notification." 28 C.F.R.

§ 14.9(a).

        "A claimant has six months after the date the agency mails the notice of final denial to

file a legal action in federal court." Redlin, 921 F.3d at 1137 (citing 28 U.S.C. § 2401(b)). Within

that same six-month period, a claimant may file a written request for reconsideration with the

agency. 28 C.F.R. § 14.9(b). "A timely request for reconsideration tolls the six-month statute

of limitations for bringing an action in district court." Redlin, 921 F.3d at 1137 (emphasis

added) (citing 28 C.F.R. § 14.9(b)). However, an untimely request for reconsideration does not

toll the limitations period. Id. at 1139; see also Roman-Cancel v. United States, 613 F.3d 37,

43 (1st Cir. 2010) ("The time parameters for such requests for reconsideration are strictly

enforced. This means that an untimely request does not reopen an expired six-month window

for the filing of suit.") (internal citations omitted); Rempersad v. United States, No. 1:18-cv-

02629, 2020 WL 2794558, at *6 (D. Md. May 29, 2020) ("Plaintiff's second administrative

filing . . . was not a timely request for reconsideration of the initial final denial. Thus, it did not

trigger a new six-month period during which Plaintiff could file a case in this Court."). If a

plaintiff fails to comply with the six-month deadline, his FTCA claim is time-barred unless

equitable tolling applies. Wong, 575 U.S. at 405.

### 1.    Waldron's FTCA claim is untimely.

As summarized above, Waldron filed an administrative claim based on the January 2023

seizure incident on July 19, 2023. The BOP issued a final denial of the claim in a letter dated

August 17, 2023, and sent to Waldron by certified mail. As required by 28 C.F.R. § 14.9(a), the

letter advised Waldron that he had six months to file suit in an appropriate United States

District Court, should he choose to do so.

It is undisputed that Waldron did not file an FTCA action in federal court or a request

for reconsideration within the sixth-month period provided in 28 U.S.C. § 2401(b). Instead,

on March 20, 2024, more than seven months after the BOP mailed the denial letter to him,

Waldron signed a duplicate administrative claim that he subsequently asked to be construed

as a request for reconsideration, and the request was denied as untimely. Neither an untimely

request for reconsideration nor a duplicate administrative claim tolls the six-month period for

filing an FTCA action. See Redlin, 921 F.3d at 1139–40; Roman-Cancel, 613 F.3d at 42–43;

Rempersad, 2020 WL 2794558, at *6. Although the letter denying the untimely request for

reconsideration incorrectly indicated that Waldron had six months from the date of that letter

to file suit, the FTCA "makes clear that the limitations period begins running as soon as the

agency mails its initial final notice," and "nothing in the statute indicates that subsequent

notices from the agency could alter or extend the running of the six-month period." Redlin,

921 F.3d at 1139. Thus, in similar contexts, courts have held that an agency letter incorrectly

indicating that a claimant had an additional six months to file suit is "insufficient to extend the

FTCA statute of limitations set by Congress." Isahack v. United States, No. 1:00-cv-9656,

7

2001 WL 1456519, at *3 (S.D.N.Y. Nov. 15, 2021) (citing Solomon v. United States, 566 F.

Supp. 1033, 1036 (E.D.N.Y. 1982)).

Applying the same reasoning here, the court concludes that neither Waldron's untimely

request for reconsideration nor the letter denying the untimely request restarted the six-month

statute of limitations set forth in § 2401(b). Because Waldron filed the instant case more than

eight months after the BOP issued its initial final denial letter, his FTCA claim is untimely.

### 2. Waldron has offered no grounds for equitable tolling.

The Supreme Court has held that the time limits set forth in § 2401(b) are not

jurisdictional and, thus, can be equitably tolled. Wong, 575 U.S. at 405. However, equitable

tolling is an "extraordinary remedy," and "litigants face a considerable burden to demonstrate

that it applies." CVLR Performance Horses, Inc. v. Wynne, 792 F.3d 469, 476 (4th Cir. 2015).

The Supreme Court has held that a litigant is entitled to equitable tolling "only if the litigant

establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way and prevented timely filing.'" Menominee Indian

Tribe v. United States, 577 U.S. 250, 255 (2016) (quoting Holland v. Florida, 560 U.S. 631,

649 (2010)).

Waldron has not identified any extraordinary circumstance that prevented him from

timely filing this action in accordance with 28 U.S.C. § 2401(b). The BOP informed him that

he had six months from the date of the August 17, 2023, denial letter to file suit, and he failed

to do so. Although Waldron argues in response to the motion that he "does not understand

law," ECF No. 14, "ignorance of the law is not a basis for equitable tolling." United States v.

Sosa, 364 F.3d 507, 512 (4th Cir. 2004). This is true "even in the case of an unrepresented

8

prisoner." Id.; see also Toliver v. Lee, No. 7:19-cv-00213, 2020 WL 5027137, at *5 (W.D. Va. Aug. 25, 2020) (dismissing an FTCA action filed 19 days after the six-month deadline by a pro se inmate and noting that "[p]ro se status does not absolve a plaintiff's obligation to strictly comply with statutory procedure") (citing McNeil v. United States, 508 U.S. 106 (1993)).

Because Waldron filed this action nearly three months past the deadline for filing suit under the FTCA, and since he has not shown that he is entitled to equitable tolling, his FTCA claim is barred as untimely. Accordingly, the defendants' motion is granted with respect to this claim.

**B.    Bivens Claim**

Waldron claims that he was injured as a result of deliberate indifference to his medical needs, and he seeks to recover damages for his injuries. "A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). "Claims for money damages against federal officials and employees who have committed constitutional violations are known as Bivens claims, after the Supreme Court's decision in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)." Johnson v. Terry, 119 F.4th 840, 846–47 (11th Cir. 2024) (emphasis added). Based on recent Supreme Court precedent, including the Court's decision in Goldey v. Fields, 606 U.S. 942 (2025), the court concludes that a Bivens remedy is unavailable in this case.*

---

\* The court also notes that a Bivens claim can only be brought against an offending federal officer and that a prisoner "may not bring a Bivens claim against the officer's employer, the United States or the BOP." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001). Thus, any Bivens claim asserted against the United States, the BOP, the DOJ, or USP Lee is also subject to dismissal on that ground.

The Constitution "does not expressly provide for money damages for constitutional wrongs." Quinones-Pimentel v. Cannon, 85 F.4th 63, 68 (1st Cir. 2023). Likewise, no federal statute authorizes plaintiffs to bring claims for damages against federal officials based on alleged constitutional violations. Although 42 U.S.C. § 1983 authorizes plaintiffs to bring such claims against state officials, "there is no statutory counterpart to sue federal officials." Mays v. Smith, 70 F.4th 198, 202 (4th Cir. 2023).

In Bivens, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). The Court held "that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 589 U.S. 93, 99 (2020). Although the Court "acknowledged that the Fourth Amendment does not provide for money damages 'in so many words,'" the Court "held that it could authorize a remedy under general principles of federal jurisdiction." Ziglar v. Abbasi, 582 U.S. 120, 131 (2017) (quoting Bivens, 403 U.S. at 396).

In the decade following Bivens, the Supreme Court recognized an implied action for damages for constitutional violations by federal officials two more times. In Davis v. Passman, 442 U.S. 228 (1979), the Court held that the Due Process Clause of the Fifth Amendment provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. In Carlson v. Green, 446 U.S. 14 (1980), the Court held that the Eighth Amendment provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal prison officials to adequately treat the prisoner's asthma.

10

"These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar, 582 U.S. at 131.

After those decisions, "the Supreme Court changed course and started to chisel away at the Bivens doctrine." Sargeant v. Barfield, 87 F.4th 358, 363 (7th Cir. 2023). In the more than four decades since Carlson, the Supreme Court has repeatedly "declined . . . to imply a similar cause of action for other alleged constitutional violations." Egbert v. Boule, 596 U.S. 482, 486 (2022) (collecting cases). "Those many post-1980 Bivens 'cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts.'" Goldey, 606 U.S. at 942–43 (quoting Egbert, 596 U.S. at 486).

In determining whether a Bivens remedy is available in a particular case, a court must first decide "whether the case presents a new Bivens context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." Egbert, 596 U.S. at 492 (internal quotation marks and brackets omitted). "The Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if even one distinguishing fact has the potential to implicate separation-of-power considerations." Tate v. Harmon, 54 F.4th 839, 846 (4th Cir. 2022) (citing Egbert, 596 U.S. at 492). Examples of factors that would support finding a new context include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

11

Ziglar, 582 U.S. at 140. Although the Supreme Court has recognized that "[s]ome differences . . . will be so trivial that they will not suffice to create a new Bivens context," id. at 149, "[t]he Court has made clear that . . . a radical difference is not required," Tun-Cos v. Perrotte, 922 F.3d 514, 523 (4th Cir. 2019).

If the court "finds that a claim presents a 'new context' different from the three Bivens cases, it must 'proceed to the second step and ask whether there are any special factors that counsel hesitation about granting an extension' of Bivens." Bulger v. Hurwitz, 62 F.4th 127, 137 (4th Cir. 2023) (quoting Hernandez, 589 U.S. at 103). This inquiry "must focus on 'separation-of-powers principles' and requires courts to ask whether judicial intrusion into a given field is appropriate." Id. (quoting Hernandez, 589 U.S. at 102). As the Supreme Court reiterated in Egbert:

> If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it. Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy. Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case, no Bivens action may lie.

Egbert, 596 U.S. at 491–92 (internal quotation marks, citations, and brackets omitted). For instance, if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the court cannot second-guess that calibration by superimposing a Bivens remedy." Id. at 498. "That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" Id. (quoting Bush v. Lucas, 462 U.S. 367, 372 (1983)).

### 1.    Waldron's case presents a new <u>Bivens</u> context.

The court agrees with the defendants that Waldron's claim of deliberate indifference presents a new <u>Bivens</u> context. Although <u>Carlson</u> also involved a claim of deliberate indifference under the Eighth Amendment, this case is "meaningfully different" in at least two respects. <u>Egbert</u>, 596 U.S. at 492 (internal quotation marks and brackets omitted); <u>see also</u> <u>Bulger</u>, 62 F.4th at 138 (noting that "the Supreme Court has made clear that courts should not interpret <u>Carlson</u> to apply outside the precise context at issue in that case" and that "even claims challenging the adequacy of medical care may involve the same 'right . . . and mechanism of jury' as in <u>Carlson</u> but still present 'different' contexts") (quoting <u>Ziglar</u>, 582 U.S. at 138). First, the case is distinguishable from a factual standpoint. <u>See</u> <u>Quinones-Pimentel</u>, 85 F.4th at 70 (noting that "the relevant analysis involves a factual comparison" and that the facts "cannot be viewed generally") (citing <u>Egbert</u>, 596 U.S. at 495; <u>Mays</u>, 70 F.4th at 204; <u>Tun-Cos</u>, 922 F.3d at 524). In <u>Carlson</u>, "the prisoner died from an asthma attack when officials failed to provide the medical care required to treat it." <u>Johnson</u>, 119 F.4th at 859. Here, as in <u>Johnson</u>, Waldron suffered "non-lethal physical injuries to his body that were eventually treated." <u>Id.</u> The severity, type, and treatment of Waldron's injuries "differ significantly from those of the prisoner in <u>Carlson</u>." <u>Id.</u>; <u>see also</u> <u>Bulger</u>, 62 F.4th at 138 (concluding that an inmate's claim of failure to protect from harm was "not authorized by <u>Carlson</u>" and instead presented a new context, and noting that even if the appellant "could make out a claim for an alleged failure to provide constitutionally adequate medical treatment, a lack of competent medical care did not cause [the inmate's] death").

13

Additionally, the Supreme Court has "explained that a new context arises when there are 'potential special factors that previous <u>Bivens</u> cases did not consider.'" <u>Egbert</u>, 596 U.S. at 492 (quoting <u>Ziglar</u>, 582 U.S. at 140). One of those special factors is the existence of alternative remedial mechanisms available to inmates in the custody of the BOP, such as "grievances filed through the BOP's Administrative Remedy Program (ARP)." <u>Malesko</u>, 534 U.S. at 74. "The fact that <u>Carlson</u> did not consider the existence of alternative remedies under the framework explained in <u>Egbert</u> renders [the plaintiff's] claim different from the one in <u>Carlson</u>." <u>Johnson</u>, 119 F.4th at 858 (noting that "alternative remedies existed for prisoners in Johnson's position besides bringing a <u>Bivens</u> action, namely submission of a grievance form through the BOP administrative remedy program"); <u>see also</u> <u>Logsdon v. United States Marshal Serv.</u>, 91 F.4th 1352, 1360 (10th Cir. 2024) (explaining that the fact that <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> did not consider the alternative remedy afforded by the DOJ's Office of the Inspector General investigation procedure was "dispositive," since "the Supreme Court has said that a departure from the <u>Bivens</u> precedents may be justified by 'the presence of potential special factors that previous <u>Bivens</u> cases did not consider'") (quoting <u>Ziglar</u>, 582 U.S. at 140).

For these reasons, the court concludes that there are meaningful differences between this case and <u>Carlson</u> and, thus, that Waldron's claim of deliberate indifference presents a new context.

**2.    Special factors counsel against extending a <u>Bivens</u> remedy.**

The court also concludes that special factors counsel against extending a <u>Bivens</u> remedy in this case. In its recent decision in <u>Goldey v. Fields</u>, the Supreme Court held that "special factors counsel against recognizing an implied <u>Bivens</u> cause of action for Eighth Amendment

14

excessive-force violations." 606 U.S. at 944. The same special factors apply here. "To begin with, Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages." Id. (citing Ziglar, 582 U.S. at 148–49). Approximately fifteen years after Carlson was decided, Congress enacted the Prison Litigation Reform Act (PLRA), which "was designed to limit litigation brought by prisoners, and remove the federal district courts from the business of supervising the day-to-day operations of prisons." Bulger, 62 F.4th at 141 (internal quotation marks and citations omitted). The PLRA "does not provide for a standalone damages remedy against federal jailers, a silence that speaks volumes and counsels strongly against judicial usurpation of the legislative function to create one." Mays, 70 F.4th at 206 (internal quotation marks and citations omitted). Additionally, "'an alternative remedial structure' already exists for aggrieved federal prisoners." Id. (quoting Ziglar, 582 U.S. at 137); see also Bulger, 62 F.4th at 140 (concluding that the existence of the BOP's Administrative Remedy Program counseled against extending Bivens to encompass Eighth Amendment claims of failure to protect and intervene). "The existence of such alternative remedial procedures counsel against allowing Bivens suits even if such 'procedures are not as effective as an individual damages remedy.'" Goldey, 606 U.S. at 944–45 (quoting Egbert, 596 U.S. at 498).

"[B]ecause Congress has expressed a desire to prevent courts from interfering with BOP decisions and has been conspicuously silent about creating a remedy for prisoners to obtain damages from individual officers, the existence of the ARP and PLRA counsel hesitation in extending Bivens" to Waldron's claim of deliberate indifference. Bulger, 62 F.4th at 141. Consequently, the court concludes that a Bivens remedy is not available in this case.

## V.    Conclusion

For the reasons stated, the defendants' motion to dismiss and for summary judgment,

ECF No. 10, is **GRANTED.** An appropriate order will be entered.

Entered: August 5, 2025

Michael F. Urbanski
U.S. District Judge
2025.08.05
11:18:16 -04'00'

Michael F. Urbanski
Senior United States District Judge